JS 44   (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Katherine Sweeney, for her minor son, C.S.

**(b)** County of Residence of First Listed Plaintiff    New Haven
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Patrick J. Sweeney, 781 Boston Post Rd., No. 1143, Madison, CT  06443; (860) 402-8100

## DEFENDANTS

Meriden Board of Education, and Jennifer Straub, individually and in her official capacity

County of Residence of First Listed Defendant    New Haven
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

|   |   |   |   |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |
| | | | | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1983

Brief description of cause:
Violation of public high school student's rights to due process and to freedom of speech/expression

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ injunction

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE    March 20, 2023

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| KATHERINE SWEENEY, for her minor son, C.S., <br><br>      Plaintiff, <br><br>   v. <br><br> MERIDEN BOARD OF EDUCATION, and JENNIFER STRAUB, individually and in her official capacity, <br><br>      Defendants. | Civil Action No.: <br><br><br> MARCH 20, 2023 |

## COMPLAINT

Patrick J. Sweeney
THE LAW OFFICES OF
PATRICK J. SWEENEY
781 Boston Post Road, No. 1143
Madison, Connecticut 06443
Tel.: (860) 402-8100
Email: patrick@pjslegal.com

## TABLE OF CONTENTS

SUMMARY OF CASE.................................................................................................. 1

JURISDICTION AND VENUE ....................................................................................2

PARTIES .......................................................................................................................2

FACTS ...........................................................................................................................3

    C.S. Runs for Junior Class President .......................................................................3

    C.S. Wins the Junior Class Presidency ...................................................................6

    C.S. is Charged with Bullying and Pressured to Resign........................................7

    C.S. is Suspended....................................................................................................9

    C.S. Returns to School and is Stripped of his Junior Class Presidency..............12

    Ms. Sweeney Seeks Information Regarding Defendants' Treatment of Her Son ...........13

    Connecticut's "Bullying" Statute is Unconstitutionally Vague and Overbroad...............15

CLAIMS FOR RELIEF .............................................................................................17

    FIRST CAUSE OF ACTION—Due Process Violation ......................................18

    SECOND CAUSE OF ACTION—Due Process "Stigma-Plus" Violation .......................19

    THIRD CAUSE OF ACTION—Federal Free Speech Violation ......................................19

    FOURTH CAUSE OF ACTION—State Free Speech Violation ....................................22

    FIFTH CAUSE OF ACTION—*Monell* Liability ...............................................23

    SIXTH CAUSE OF ACTION—Declaratory Judgment/Injunction
        (Fourteenth Amendment)......................................................................24

    SEVENTH CAUSE OF ACTION—Declaratory Judgment/Injunction
        (First  Amendment)..............................................................................28

    EIGHTH CAUSE OF ACTION—Negligent Infliction of Emotional Distress................31

PRAYER FOR RELIEF .............................................................................................32

JURY DEMAND ........................................................................................................33

Through her undersigned counsel, Plaintiff Katherine Sweeney, for her minor son C.S., as her complaint against Defendants Meriden Board of Education and Ms. Jennifer Straub ("Defendants"), upon information and belief, alleges as follows.

### SUMMARY OF CASE

1.      This is an action to vindicate the constitutional rights of C.S., a seventeen (17) year-old public school student at Francis T. Maloney High School in Meriden, CT ("Maloney High School" or "MHS").  The day after his classmates elected C.S. to be junior class president, Defendants charged him with "bullying" his election opponent.  The charge was based solely upon a single incident of off-campus speech, which speech was not vulgar and could not reasonably be construed as "bullying."  C.S. privately protested the "bullying" charge, whereupon Defendants summarily suspended him, *without providing him due process*. Thereafter, Defendants attempted to compel C.S. to apologize for his otherwise protected speech. When C.S. refused, Defendants summarily excluded him from the student council.

2.      Through this Action, Plaintiff primarily seeks injunctive relief, directing Defendants (i) to expunge the "out-of-school" suspension from C.S.' student record; (ii) to provide C.S. a "name-clearing" hearing; and (iii) to allow C.S. to participate in the MHS student council, as the duly-elected president of his class, whether it be for the remainder of the 2022-2023 school year or the 2023-2024 school year.

3.      Plaintiff bases this Action upon: (i) Defendants' deprivation of C.S.' right to a public education, otherwise secured by the Connecticut Constitution, without due process of law, otherwise secured by the federal and state constitutions; (ii) Defendants' stigmatization of C.S. as a result thereof; and (iii) Defendants' violation of C.S.' right to free speech, otherwise secured by the federal and state constitutions.

1

4.      Through this Action, Plaintiff also seeks a declaration that Section 10-222d of the Connecticut General Statutes ("Section 10-222d" or "Connecticut's Bullying Statute"), on its face and as applied to C.S., is unconstitutional.  Under Connecticut's Bullying Statute, which contains no *mens rea* requirement, reasonable students cannot know what conduct or speech would subject them to a charge of "bullying" and, thereafter, to suspension or other adverse actions by a school district.   Such unconstitutionally vague and overbroad restrictions of speech are especially chilling in a high school setting where the punishment is essentially terminated before judicial review can be obtained.

## JURISDICTION AND VENUE

5.      Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 28. U.S.C. § 1367.

6.      Venue is proper because Plaintiff is a citizen of Connecticut.

## PARTIES

7.      C.S. is a seventeen (17) year old male who resides in Meriden, CT. As a minor, C.S. is represented herein by his mother, Katherine Sweeney ("Plaintiff" or "Ms. Sweeney"). She is his sole custodian.  She is not a party to this Action.

8.      Defendant Meriden Board of Education ("Board") is an administrative agency of the Town of Meriden, Connecticut, a political subdivision of the State of Connecticut, with a business address at 22 Liberty St., Meriden, Connecticut 06450.

9.      Defendant Jennifer Straub is a natural person, an employee of the Board, and the principal of Maloney High School ("Principal Straub").  At all relevant times, she was acting under color of law and as the final decision maker for all disciplinary actions at MHS, up to and including suspension, pursuant to Defendant Board's Code of Conduct.  She is resident in this district and is named herein, both, in her personal capacity and her official capacity.

**FACTS**

10.    C.S. entered Maloney High School as a freshman, has excelled academically and athletically, and has always been a positive member of the community.

11.    In his two and a half years at MHS, C.S. has never been subject of any discipline.

12.    C.S. is a racial and political minority member of the MHS community.

13.    C.S. also suffers from autism spectrum disorder ("ASD"), which condition Defendant Board was made aware of when Plaintiff enrolled him as a freshman at MHS.

14.    At that time, in the fall of 2020, Plaintiff submitted the doctor's report of C.S.' neuropsychological examination ("C.S.' Medical Report") for their consideration.

15.    Defendant Board acknowledged the ASD but declined to offer any accommodation under Section 504 of the Rehabilitation Act of 1973.

16.    Nevertheless, C.S. excelled academically and is currently enrolled in Defendant Board's regular education program, which includes several Advanced Placement classes.

17.    Academically, C.S. is in or about the ninety-fourth percentile of his class.

18.    Outside of school, C.S. is an active member of his local parish.

19.    Outside of school, C.S. worked at a fast-food chain as a line-cook.

20.    Notwithstanding the scandalous charges against him by Defendants herein, C.S. has never bullied anyone, although he, himself, has been the target of bullies at MHS.

**C.S. Runs for Junior Class President**

21.    At all times alleged herein, C.S. was a member of the Maloney High School graduating class of 2024, the junior class.

22.    In September 2022, C.S. signed-up to run for junior class president for the 2022-2023 academic year.

3

23.     The incumbent was Jane Doe,[1] a fellow member of the junior class, who had been their class president for the two previous academic years (freshman and sophomore years).

24.     Jane Doe is also the daughter of a local community leader, and prominent local and national political figure, Mr. John Doe.

25.     Principal Straub previously worked for Mr. Doe and had publicly endorsed his political ascendency.

26.     On September 8, 2022, C.S. sent an image to his friends on Snapchat, which was a self-portrait (also known as a "selfie") of C.S. with a caption, "Vote for [C.S.] Class President." ("September 8, 2022 Post").

27.     Snapchat is a social media application that allows its users to render images from the camera roll on their mobile device or computer with conspicuous text captions created by the user, then to post those images (with or without added text captions) to Snapchat so that a select group of other Snapchat users may view the images, as part of a so-called "Shared Story."

28.     In order for one Snapchat user to view images posted by another Snapchat user, one of two things must happen: (i) he or she must invite that other user to access his or her story, which invitation the other user must then accept, or (ii) the other user must request access from him or her, which request he or she must then accept.  In either event, the two Snapchat users are then considered Snapchat "friends," which provides mutual access to each other's Shared Story.

29.     Upon posting an image to one's Shared Story, the image remains available for access for 24 hours, after which the image is automatically deleted from the Shared Story and no longer accessible to one's "friends."

30.     At the time of the September 8, 2022 Post, and at all times herein, C.S. had

---

[1] Plaintiff employs the pseudonym Jane Doe to protect the identity of the individual who, upon information and belief, is also a minor.

approximately 120 "friends" who could view his Snapchat postings.

31.    On September 15, 2022, C.S. sent an image to his friends on Snapchat, promoting himself for class president:



("September 15, 2022 Post") (image redacted).

32.    The September 15, 2022 Post is a selfie of C.S., dressed in his fast-food work

uniform, above an image of his PSAT score and his Maloney High School class rank, with the following text captions:

- Class of 2024
- Can bench 245
- Will make Prom cheaper
- MMGA [read: Make Maloney Great Again]
- Y'all know me.  I'm running for Class President.  I'm a working man I know how to make money.  I know some of my opponents are running two at a time.  I know the saying two heads are better than one but when you need decisive action quality is better than quantity.

33.     C.S. made the September 15, 2022 Post after school hours and while at his home, where he lives alone with his mother, Ms. Sweeney.

*     *     *     *

34.     On September 26, 2022, C.S. attended an on-campus meeting run by the faculty advisors to the student council—Ms. Laurie Struble ("Ms. Struble") and Mr. Scott Aresco ("Mr. Aresco")—wherein they explained the election process, including requirements for getting one's name on the election ballot.

35.     C.S. dutifully complied with all eligibility requirements.

36.     On or about October 18, 2022, Defendants announced that the only two candidates for junior class president were C.S. and Jane Doe.

37.     On October 21, 2022, Defendants conducted the election.

**<u>C.S. Wins the Junior Class Presidency</u>**

38.     On October 26, 2020, Defendants announced that C.S. won the election.

39.     Later that day, after school hours and from his home, C.S. sent his friends on Snapchat an image, a photo of the student council election results indicating that he won the election, to which he added the caption "[Doe] L," indicating that Jane Doe had "lost" the

6

election.  ("October 26, 2022 Post").

40.     C.S. harbored no animus against Ms. Doe and had no intention of causing her to suffer any emotional harm.

41.     C.S. did not direct the comment to Ms. Doe.

42.     C.S. had no personal relationship with Ms. Doe.

43.     Shortly after the October 26, 2022 Post, Ms. Struble, faculty advisor to the student council, sent C.S. an message congratulating him "on becoming class president," and notifying him that they will have a meeting after school the following week "to go over duties and expectations."

44.     That evening, C.S. told his family about the election results, celebrated with his mother, and discussed with her his plans for his class presidency.

### C.S. is Charged with "Bullying" and Pressured to Resign

45.     The following day, Thursday October 27, 2022, at or about 10:30 AM, while C.S. was in-class, Principal Straub summoned him to the school office.

46.     C.S. went to the school office where the school secretary told him that Principal Straub wanted to speak with him and directed him to have a seat.

47.     C.S. sat in the front of the office and waited for approximately fifteen (15) excruciating minutes before Principal Straub appeared and directed him into her personal office.

48.     A uniformed and armed Meriden Police Officer was waiting for them in Principal Straub's office.

49.     Principal Straub directed C.S. to sit down, and she closed the door behind them.

50.     Principal Straub asked if C.S. knew why he was summoned to her office.

51.     C.S. indicated that he did not.  He was terrified.

7

52.    Principal Straub referenced the October 26, 2022 Post and charged C.S. with "bullying" Jane Doe.

53.    Principal Straub did not reference any of C.S.' Snapchat posts except the October 26, 2022 Post.

54.    Principal Straub directed C.S. to delete the October 26, 2022 Post, which he did immediately, in the presence of Principal Straub and the armed Meriden Police Officer.

55.    Principal Straub did not give C.S. any chance to address the charges.

56.    Instead, and incredibly, Principal Straub began to try to coerce C.S. into resigning his class presidency "voluntarily."

57.    She told him that the class presidency would require a lot of responsibility and would take a lot of his time.

58.    She noted that C.S. was wearing his fast-food work uniform and told him that the class presidency would interfere with his after-school employment.

59.    She also noted that the class presidency would interfere with his extra-curricular sports participation.

60.    C.S. responded that he could "handle it."

61.    But Principal Straub would not be deterred, asking C.S. in an extremely suggestive manner, "Do you even want this [the presidency] anyway?  Why do you want it?"

62.    C.S. finally relented and, in protest, stated that he might agree to resign voluntarily if Defendants would stop "stalking" him—referring to their tracking of his private off-campus messages with his friends—which he already perceived to be punitive.

63.    Principal Straub dismissed C.S. from her office, with the only direction that he refrain from using Jane Doe's name in any further social media posts.

8

\*       \*       \*       \*

64.     At or about this time, Defendants were statutorily required to be in communication with Jane Doe's parents regarding the measures being taken to ensure Jane Doe's safety and preventing further acts of "bullying."

65.     Upon information and belief, Jane Doe's parents urged Principal Straub to suspend C.S. and otherwise punish him.

\*       \*       \*       \*

66.     Shortly after being released from Principal Straub's office, while in the cafeteria during his lunch period, C.S. sent his friends on Snapchat an image, a selfie with a caption: "I got called to the office for bullying a certain former president. One of y'all snitched."  ("October 26, 2022 Post").

67.     After lunch, C.S. went to his eighth-period study hall, where he told the teacher in charge about his meeting with Principal Straub that morning.

68.     The teacher responded that he thought the administration was giving C.S. a hard time because of Jane Doe's familial relationship.

### C.S. is Suspended

69.     While C.S. was still in eighth-period study hall, Principal Straub again summoned him to the school office.

70.     When C.S. arrived at the office, Principal Straub was waiting near the front and directed him to her personal office.

71.     Ms. Struble and an assistant principal were already in the office when they entered.

72.     Principal Straub closed the door behind her and directed C.S. to sit down.

73. Principal Straub stated that she saw the October 27, 2022 Post, which C.S. had posted only an hour earlier.

74. Principal Straub stated that she was angry and disappointed with C.S. because she had specifically directed him "to stay off of social media."

75. Principal Straub's statement was not true, in that she did not direct C.S. "to stay off of social media," but rather directed him only to refrain from using Jane Doe's name in any further posts, which he did not.

76. Principal Straub, however, did not give C.S. any chance to address the charge.

77. Principal Straub told C.S. that she was not going to take away his presidency at that time, but that he would have to take a day off from school, in order to think about his conduct, why he was sorry, and how he was going to change to do better.

78. Principal Straub reiterated that she was still considering whether to take away his class presidency, but that she was looking forward to C.S. apologizing and convincing her that he should keep his presidency.

79. C.S. understood Principal Straub's comments to mean that she intended to take away the presidency unless he apologized for his Snapchat post from the previous evening in which he wrote "[Doe] L".

80. Principal Straub, again, did not provide C.S. with an opportunity to address the charges against him.

81. Rather, Principal Straub called Ms. Sweeney on the phone and advised Ms. Sweeney (i) that she had spoken earlier with C.S. about his October 26, 2022 Post ("[Doe] L") and (ii) that she had specifically told C.S. to stay off social media after their conversation.

82. Principal Straub then reiterated the false pretext for punishing C.S., *i.e.*, that he

had disobeyed her by sending the October 27, 2022 Post ("I got called down the office for bullying a certain former president.").

83.     Principal Straub indicated to Ms. Sweeney that she was fed up with C.S., thought C.S. was projecting a bad image, and did not want him coming to school the following day.

84.     Ms. Sweeney understood, based upon Principal Straub's comments, that the one-day absence would not be an official out-of-school suspension.

85.     Ms. Sweeney agreed that she would keep C.S. home the following day and keep him off social media, which she did.

86.     Defendant Board's Code of Conduct prohibited Principal Straub from imposing an out-of-school suspension unless, during an informal hearing: (i) she determined that the student posed such a danger to persons or property or such a disruption of the educational process that the student should be excluded from school during the period of suspension; or (ii) she determined that an out-of-school suspension is appropriate based on evidence of the student's previous disciplinary problems and previous efforts to address the student's disciplinary problems through means other than out-of-school suspension.  Defendant Board's Code of Conduct, Art. VI.2.

87.     Here, there was no informal hearing and, even if there was a constitutionally required hearing, C.S.' conduct did not present sufficient danger or disruption and C.S. had no previous disciplinary problems.

88.     As such, Principal Straub had no basis to impose an out-of-school suspension.

                    *        *        *        *

89.     Less than an hour later, while still on campus, Jane Doe directed a video to C.S. in which she refused to apologize to C.S., mockingly repeated that she loved him, and acted out a

11

pantomime of someone posing as crying baby.

90.     On Friday October 28, 2022, C.S. stayed home from school.

### C.S. Returns to School and is
### Stripped of his Junior Class Presidency

91.     On Monday, October 31, 2022, C.S. returned to school.

92.     At about 1:30 p.m. on October 31, 2022, Defendants summoned C.S. to the office where he met with Principal Straub, Ms. Struble, and an assistant principal.

93.     Principal Straub began the meeting by asking C.S., in a highly suggestive manner, if he was prepared to tell them anything.

94.     C.S. responded that he was not going to apologize.

95.     Principal Straub stated she was disappointed that C.S. appeared to "care so little about the presidency."

96.     Principal Straub added that she could not "read" C.S.

97.     Principal Straub's observation corresponded with the first criteria of C.S.' ASD diagnosis, *i.e.*, persistent deficits in social communication and social interaction. *See* American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders ("DSM-5").

98.     Principal Straub knew or should have known a that C.S. suffered from a severe nonverbal learning disorder, as set forth in his Medical Report.

99.     Further, Principal Straub knew or should have known that individuals, such as C.S., who suffer from ASD are often perceived as though they do not care.

100.    Further, Principal Straub knew C.S.' verbal response to her previous suggestions that C.S. concede the presidency were direct and unequivocal: "I can handle it."

12

101.    Principal Straub then abruptly concluded the meeting by stating that they were still considering whether to take away C.S.' class presidency, but that they would keep thinking about, and that they would be meeting with C.S. the following day.

102.    The following day, C.S. was at school but Defendants did not invite him to any further meeting.

103.    C.S. received no further communication concerning the student council, despite Ms. Struble's welcome letter on October 26, 2022 that there would be an organizational meeting that following week.

104.    Upon information and belief, the newly constituted student council has been meeting regularly, while C.S. had not been invited to participate.

105.    C.S. was fearful that any inquiry or protest would invite further discipline.

### Ms. Sweeney Seeks Information
### Regarding Defendants' Treatment of Her Son

106.    On November 8, 2022, Ms. Sweeney checked C.S.' on-line attendance record—for the first time since the allegations herein—and learned that his October 28, 2022 absence was recorded as an official out-of-school suspension.

107.    Neither Ms. Sweeney nor C.S. had received any written notice regarding the suspension.

108.    Meanwhile C.S. suffered emotional distress, corresponding physical distress, reputational damage, and was made to miss several work-shifts at his after-school job.

109.    On December 5, 2022, during an on-campus wrestling match at Maloney High School in which C.S. was participating, one or more of his fellow MHS classmates vandalized his personal property, smashing his mobile phone.

13

110.    On or about December 8, 2022, without any invitation, Ms. Sweeney went to Maloney High School to speak with Principal Straub about: (i) the suspension; (ii) the vandalization of her son's property, which she suspected to be bullying; (iii) a false claim by her son's teacher (and student council faculty advisor) Mr. Aresco that C.S. was not doing his class work and that C.S. was lying about it; and (iv) Defendants' resolution of her son's role on the student council.

111.    With respect to suspension, Principal Straub confirmed the absence on October 28, 2022 was an out-of-school suspension, and that it would stay that way.

112.    Principal Straub further advised that she could not provide Ms. Sweeney any details as to the harm allegedly suffered by Jane Doe that would support her decision to impose an out-of-school suspension.

113.    With respect to the reports of vandalism, bullying, and Mr. Aresco's false claims against C.S., Principal Straub stated that she would direct an investigation of the complaints, which she never did.

114.    With respect to the Defendants' resolution of C.S.' role on the student council, Principal Straub indicated she had resolved to re-run the election and not let C.S. participate; however, when Jane Doe (the only other candidate) advised Principal Straub that she was not interested in being president, Principal Straub decided simply (and arbitrarily) not to have a junior class president.

*    *    *    *

115.    As a result of all the aforesaid, C.S. has suffered, and continues to suffer, emotionally, physically, reputationally, and monetarily.

**Connecticut's Bullying Statute is**
**Unconstitutionally Vague and Overbroad**

116.    Through Section 10-222d of Connecticut General Statutes ("Section 10-222d") ("Connecticut's Bullying Statute"), the Connecticut Legislature took aim at the problem of "bullying" in and around public schools across the state.

117.    But in its zeal to represent popular public opinion, the legislature failed to sufficiently define the term "bullying" or provide any standard (reasonable or objective) for its public-school administrators to guard against the statute's arbitrary enforcement.

118.    The statute's invitation to arbitrary enforcement is especially concerning because of the public-high school setting, where the punishment is essentially terminated before judicial review can be obtained, and many students will be made to suffer in a silence that may stifle future expression as well.    The chilling effect is intensified because the promise of judicial review is virtually an empty one.    *Thomas v. Board of Ed., Granville Central School Dist.*, 607 F.2d 1043 (2d Cir. 1979).

119.    Compounding the problem of vagueness, Section 10-222d also fails to provide any limiting principle (such as intent) that would limit its overwhelming sweep.

120.    Through Section 10-222d, the legislature directs each school district in Connecticut, as its implementing agencies, to develop a Safe School Climate Plan and a Bullying Prevention and Intervention Policy for which the legislature mandated very specific terms.

121.    Every substantive provision of Section 10-222d turns upon the statute's definition of the word "bullying" which is unconstitutionally vague and overbroad because, among other things, it does not provide a public-school student of ordinary intelligence a reasonable opportunity to understand what speech or conduct could be considered "bullying" and thereby be subject to prosecution by a school administrator.

15

122.    Section 10-222d, in pertinent part, defines "bullying," the primary evil at which the entire statute is aimed, as follows:

> (A) the **repeated use** by one or more students of a written, oral or electronic communication, such as cyberbullying, **directed at or referring to another student** attending school in the same school district, or (B) a physical act or gesture by one or more students repeatedly directed at another student attending school in the same school district, that: (i) **Causes physical or emotional harm to such student** or damage to such student's property, (ii) places such student in reasonable fear of harm to himself or herself, or of damage to his or her property, (iii) creates a hostile environment at school for such student, (iv) infringes on the rights of such student at school, **or** (v) substantially disrupts the education process or the orderly operation of a school. **"Bullying" shall include, but not be limited to**, a written, oral or electronic communication or physical act or gesture based on any actual or perceived differentiating characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity or expression, socioeconomic status, academic status, physical appearance, or mental, physical, developmental or sensory disability, or by association with an individual or group who has or is perceived to have one or more of such characteristics....

Section 10-222d(a)(1) (emphasis added).

123.    While a physical act must be "directed at" another student to qualify as "bullying," a written or oral act need not be directed at the other student to be considered "bullying."

124.    To be considered "bullying," any written or oral statement need only cause "emotional harm," even in the absence of any intent to cause such harm.

125.    Here, as the statute was applied to C.S., it is beyond dispute that the speech at issue was not directed at Jane Doe nor intended to cause her any emotional harm.

*       *       *       *

126.    Section 10-222d also defines "Outside of the school setting" as follows:

> a location, activity or program that is not school related, or through the use of an electronic device or a mobile electronic device that is not owned,

16

leased or used by a local or regional board of education….

Section 10-222d(a)(7)

127.   The definition of "Outside school setting" is employed elsewhere in the statute, and in Defendant Board's regulations, cannot survive the United State Supreme Court ruling in *Mahanoy Area School District v. B.L.*, 141 S.Ct. 2038 (2021), which limits a public school's ability to regulate (through discipline or otherwise) student speech outside of the school setting, *even if that speech is "school related."*

## CLAIMS FOR RELIEF

128.   As set forth more specifically below, the foregoing allegations supports several causes of action against Defendant Board and Defendant Straub:

- Violation of C.S.' right to due process prior to his out-of-school suspension, and associated stigmatization, against Defendant Straub;
- Violation of C.S.' right to free speech and/or expression under the U.S. Constitution and the Connecticut Constitution, against Defendant Straub;
- *Monell* liability, against Defendant Board;
- Declaratory Judgment/Injunction finding Conn. Gen. Stat. § 10-222d unconstitutional, under the due process clause of the U.S. Constitution and the Connecticut Constitution, on its face and as applied to C.S., against all Defendants;
- Declaratory Judgment/Injunction finding Conn. Gen. Stat. § 10-222d unconstitutional, under the free speech/free expression clauses of the U.S. Constitution and the Connecticut Constitution, on its face and as applied to C.S., against all Defendants; and
- Negligent infliction of emotional distress under Connecticut common law, against all Defendants.

129.   All of the factual allegations set forth herein (above and below) are expressly incorporated into the following specific causes of action.

**FIRST CAUSE OF ACTION**
(42. U.S.C. § 1983—Due Process Violation)
(U.S. Constitution, Fourteenth Amendment)
(Connecticut Constitution, Art. I, Sec. 8)
(Against Defendant Straub)

130. Plaintiff repeats the allegations in Paragraph Nos. 1 through 129 above.

131. Defendants violated C.S.' right to due process of law under the Fourteenth Amendment of the United State Constitution and Art. I, Section 8 of the Connecticut Constitution by failing to provide him with even the most minimal due process before labelling him a "bully" and summarily suspending him from school.

132. C.S. has a property interest in his public education, as guaranteed to him by Article 8, Section 1 of the Connecticut Constitution.

133. Defendants deprived C.S. of his constitutional right to an education, without providing C.S. an opportunity to understand and respond the charges against him.

134. As set forth above, Principal Straub acted with evident ill-will and malice toward C.S., with reckless and callous indifference to his rights.

135. C.S. has been harmed, and continues to be harmed, by the aforesaid and is entitled to injunctive relief.

136. At the time of the offense, it was well-settled law that the Due Process clause prohibited a public-school principal from denying a student his or her right to a public school education without, at a minimum, an opportunity to respond to any charge that would result in an out-of-school suspension.

137. Under the circumstances, Defendant Board's Code of Conduct prohibited an out-of-school suspension.

138.    Pursuant 28 U.S.C. § 1983, C.S. is entitled to nominal damages, compensatory damages (including mental and emotional distress), punitive damages, and attorney's fees.

### SECOND CAUSE OF ACTION
(42 U.S.C.  § 1983—Due Process Violation Plus Stigma)
(U.S. Constitution, Fourteenth Amendment)
(Against Defendant Straub)

139.    Plaintiff repeats the allegations in Paragraph Nos. 1 through 138 above.

140.    Defendants charged C.S. with "bullying."

141.    Defendants' statement that C.S. was "bullying" was false.

142.    C.S. has a liberty interest in his reputation.

143.    Defendants' statement that C.S. was a "bully" was sufficiently derogatory to injure C.S.' reputation.

144.    Defendants publicly disseminated the "bullying" charge/finding against C.S., the news of his suspension, and the loss of his role on the student council, by communicating as much to Jane Doe's parents, who are members of the general public.

145.    Defendants further disseminated the "bullying" charge/finding against C.S., the news of his suspension, and the loss of his role on the student council, by creating and maintaining a record of same in C.S.' academic file.

146.    By doing so, Defendants have tarnished C.S.' good reputation and subjected him to scorn, ridicule, and bullying.

147.    C.S. has a state law created property interest in his public education.

148.    C.S. suffered a loss of property as a result of the out-of-school suspension.

149.    C.S. suffered a loss of his constitutional right to free speech.

150.    As a result of the aforesaid, C.S. has been harmed and continues to be harmed.

151.    C.S. is entitled to expungement of the "out-of-school" suspension from his

19

student record, such that it may not be used against him in any manner in the future.

152. Defendant Board's Code of Conduct does not provide for such relief. *See* Defendant Board's Code of Conduct, Art. VI.11.

153. C.S. is further entitled to expungement of any reference to him in his academic record as a "bully" and to a "name-clearing" hearing.

154. Pursuant to 28 U.S.C. § 1983, C.S. is entitled to nominal damages, compensatory damages (including mental and emotional distress), punitive damages, and attorney's fees.

**THIRD CAUSE OF ACTION**
(42 U.S.C. § 1983—Free Speech Violation)
(U.S. Constitution, First Amendment)
(Against Defendant Straub)

155. Plaintiff repeats the allegations in Paragraph Nos. 1 through 154 above.

156. The First Amendment of the United States Constitution guarantees the right of "freedom of speech."

157. C.S. engaged in constitutionally protected activity, in the following:

a. his off-campus September 15, 2022 Post, through which he espoused a decidedly Republican view-point as part of his student council campaign platform ("MMGA" intended to mean "Make Maloney Great Again," a reference to a well-known Republican mantra);

b. his off-campus October 26, 2022 Post, wherein he announced the results of the election;

c. his on-campus October 27, 2022 Post, wherein he protested the charge of "bullying" based upon his off-campus speech; and

d. his on-campus refusal to utter an apology on October 31, 2022 and/or his neuropsychological inability to express contrition at that time, or during the earlier interrogations.

158. As to the off-campus speech, the United States Supreme Court restricts a public school from regulating its students off-campus speech, except under enumerated circumstances, which circumstances did not exist here.

20

159. C.S.' speech was not serious or severe bullying or harassment targeting a particular individual.

160. C.S.' speech did not threaten any teachers or students.

161. C.S. transmitted his speech through a personal cellphone, to an audience consisting of his private circle of Snapchat friends.

162. C.S.'speech was not indecent, lewd, or vulgar.

163. No member of his audience would reasonably perceive C.S.' speech as bearing the imprimatur of the school.

164. C.S.' speech did not materially disrupt classwork or involve substantial disorder or invade the rights of others.

165. As such, Defendants lacked authority to regulate C.S.' off-campus speech and violated C.S.' rights by labelling him as a "bully" based upon that speech, suspending him from school, attempting to coerce an apology, and cancelling his junior class presidency.

166. Defendants' malice was evidenced in Principal Straub's efforts to convince C.S. to resign his presidency "voluntarily," immediately following the October 26, 2022 Post.

167. Defendants' retaliatory motive was evidenced in, among other things, Defendants use of a demonstrably false pretext to discipline him further.

168. Moreover, Defendants declined to suspend C.S. or cancel his junior class presidency until urged to do so by a local community leader.

169. C.S.' on-campus October 27, 2022 Post also constituted free-speech, wherein he privately protested the charge of "bullying" and his traumatizing experience of being interrogated, coerced, and threatened by Principal Straub and the armed Meriden Police Officer.

170. Defendants took adverse action against C.S. that would chill a person of ordinary

21

firmness from continuing in his or her expression.

171.    Defendants' actions against C.S. were motivated, at least in part, by C.S.' exercise of his constitutional right to engage in speech and to refrain from speech.

172.    As a result of the aforesaid, C.S. has been harmed and continues to be harmed.

173.    At the time of the offense, the law clearly established a student's right to exercise free speech without facing reprisal from public school administrators.

174.    Even more certainly, public school administrators are prohibited from seeking approval of the community-at-large for expression that took place off school property, after school hours.

175.    At the time of the speech in question, C.S. was a political and racial minority in the Maloney High School Community, and his speech was unpopular among the relevant community-at-large.

176.    Pursuant 28 U.S.C. § 1983, C.S. is entitled to nominal damages, compensatory damages (including mental and emotional distress), punitive damages, and attorney's fees.

**FOURTH CAUSE OF ACTION**
(Connecticut Common Law—Free Speech Violation)
(Connecticut Constitution, Art. I, Secs. 4 and 5)
(Against Defendant Straub)

177.    Plaintiff repeats the allegations in paragraph nos. 1 through 176 above.

178.    Article I, Section 4 of the Connecticut Constitution guarantees that "[e]very citizen may freely speak, write and publish his sentiments on all subjects…."

179.    Further, Article I, Section 5 of the Connecticut Constitution guarantees that "[n]o law shall ever be passed to curtail or restrain the liberty of speech…."

180.    The Connecticut Constitution encompasses a broader spectrum of speech protections than those afforded under the federal constitution. *State v. Linares*, 232 Conn. 345

22

(1995).

181.    Connecticut statutory law does not provide for a cause of action for violation of the right to free speech outside of the employment context, but Connecticut courts have the inherent power to recognize new torts. *Rizzuto v. Davidson Ladders, Inc.*, 280 Conn. 225 (2006).

182.    C.S.' speech, both off-campus and on-campus, was compatible with normal activity in a public high school setting.

183.    C.S. has suffered and continues to suffer from Defendant's violation of his right to free speech under the Connecticut Constitution and is entitled to injunctive relief, nominal damages, punitive damages, and attorney's fees.

**FIFTH CAUSE OF ACTION**
(*Monell* Liability)
(Against Defendant Board)

184.    Plaintiff repeats the allegations in Paragraph Nos. 1 through 183 above.

185.    All of Principal Straub's actions alleged herein were taken under color of law, deprived C.S. of several constitutional rights, and caused him damages.

186.    The constitutional injuries were the result of Defendant Board's policy as set forth in its code of conduct and otherwise as an accepted unofficial policy.

187.    Defendant Jennifer Straub, as principal of Maloney High School, was the policymaker for purposes of *Monell* liability, as established by Defendant Board's Code of Conduct which provides, "The decision of the principal or designee with regard to disciplinary actions up to and including suspensions shall be final." Defendant Board's Code of Conduct, at Art. VI ("Procedures Governing Suspension"), Section A.12.

188.    As such, Defendant Board is liable for the tortious conduct of Defendant Straub.

23

**SIXTH CAUSE OF ACTION**
(Declaratory Judgment/Injunction)
(U.S. Constitution, Fourteen Amendment)
(Connecticut Constitution, Art. I, Sec. 8)
(Unconstitutional Vagueness)
(Against All Defendants)

189.    Plaintiff repeats the allegations in Paragraph Nos. 1 through 188 above.

190.    Section 10-222d of the Connecticut General Statutes ("Section 10-222d") violates the Due Process Clause of the Fourteenth Amendment, facially and as applied to C.S.

191.    Defendant Board's codes, regulations, and policies incorporate the prescriptions and proscriptions of Section 10-222d and, therefore, are also unconstitutional.

192.    There is a case or controversy, an actual bona fide and substantial question in dispute, which requires settlement between the parties.

*Facial Challenge*

193.    A facial challenge under the Due Process Clause of Fourteenth Amendment is permitted where a statute's uncertainty threatens to inhibit the enjoyment of constitutionally protected rights, without a *mens rea* requirement.

194.    Section 10-222d has no *mens rea* requirement and threatens to subject all public-school elementary and high-school students in the state to loss of several constitutionally protected rights:

(i)     their right to freedom speech under the federal and state constitutions;

(ii)    their right to liberty in their reputation under the federal and state constitutions; and

(iii)   their right to a free education under the Connecticut Constitution.

195.    The government violates the guarantee of due process by taking away someone's life, liberty, or property under a penal law which is (i) so vague that it fails to give ordinary

24

people fair notice of the conduct it punishes, or (ii) so standardless that it invites arbitrary enforcement.

196.    Section 10-222d employs a definition of "bullying" that is so vague that it fails to provide ordinary people with fair notice of the conduct it punishes, and the vagueness of "bullying" permeates the statute.

197.    Section 10-222d fails to give adequate notice that certain conduct will put the actor at risk of liability and a person of common intelligence must necessarily guess at its meaning.

198.    Section 10-222d is also so standardless that it invites arbitrary enforcement.

199.    To assess whether a student suffered emotional harm the sole controlling standard is the subjective standard of a complaining student elementary of high-school.

200.    Without a reasonableness standard, or some other limiting principle such as intent, a "reasonable" person cannot be expected to understand what Section 10-222d prohibits, under penalty of the deprivation of several other constitutional rights.

201.    It clearly invites abuse and arbitrary application.

*       *       *       *

202.    The Connecticut Bullying Statute would subject completely innocent speech, to a possible charge of bullying and concomitant loss of rights in the absence of any intent to cause emotional harm.

203.    Under the statute, a public-school principal could base a "bullying" charge against a student upon the repetition of any otherwise innocent exchanges that occur every day between and among students in the same school district, for example:

     a.   A student disagreeing with another student in an academic debate;
     b.   A student asking another student to go to the prom, and that other

        student refusing;

c. A student asking another student for a ride home, and that other student refusing;

d. A student asking another student to join a study-group, and that other student refusing;

e. A student studying journalism reporting the factual results of a sporting event or some other competition (such as an election);

f. A student playing sports on a competitive playing field, or practicing for such competition with his or her own teammates.

g. A student in a studio art class engaging in a critique of another student's work.

h. A student speaking privately to a friend about a legitimate dispute or gripe with another student.

204. If the student who is the object of the speech perceives a well-intended salutation as facetious or sarcastic, he or she may suffer (or claim to suffer) emotional harm and that speech may be considered "bullying."

205. Every year, Maloney High School sports teams plays dozens of competitive matches against another public high school in the district (Orville H. Platt High School) such that any gesture or utterance at (or about) a member of the opposing team could be the basis for a charge of "bullying."

**<u>As Applied Challenge</u>**

206. As applied to C.S., Section 10-222d (as implemented by Defendant Board) failed to provide C.S. with notice that any of his private communications with his friends—not directed at Ms. Doe—were prohibited.

207. Moreover, the statute requires that the conduct be "repeated," but, here, Principal Straub based her charge of bullying upon only the October 27, 2022 Post ("[Doe] L").

\*      \*      \*      \*

208. Section 10-222d fails to present an ordinary person with sufficient notice of or the

26

opportunity to understand what conduct is prohibited or proscribed.

209. Read literally, it would apply to any utterance "directed at or referring to another student" which unwittingly caused that other student "emotional distress."

210. No reasonable person would think that sending an off-campus private Snapchat to a group of friends relaying the student election results—especially in a decidedly non-vulgar manner—would be considered "bullying."

211. No reasonable person would think that sending an on-campus private Snapchat to a group of friends protesting Principal Straub's charge of "bullying" would be considered "bullying."

212. No reasonable person could have known or expected that his private message to his friends would reach Ms. Doe, and certainly not, if she did see it, that it would cause her emotional damage.

213. C.S. did not intend to cause emotional harm.

214. Moreover, Ms. Doe's video message to C.S. within an hour of his suspension indicates an absence of emotional harm.

\*     \*     \*     \*

215. Section 10-222d lacks sufficient limits on discretion of officers who enforce the statute.

216. The statute does not provide sufficiently clear standards, as a general matter, to minimize the risk of arbitrary enforcement.

217. The statute provides no objective, verifiable standard by which a public-school principal must determine if certain conduct is prohibited.

218. To assess whether a student suffered emotional harm the sole controlling standard

27

is the inherently *subjective* standard of a high-school student.

219.    Here, Principal Straub stated that she could not explain to Ms. Sweeney the harm suffered by Jane Doe.

220.    Even in the absence of sufficiently clear standards, as a general matter, C.S.' specific conduct falls outside the core of the statutes statute's prohibition.

221.    The core of the statute's prohibition appears to be intentional conduct leveraging a power differential between the opposing students resulting in harm to the subordinate student.

*      *      *      *

222.    Based on the forgoing, the Court should declare that Section 10-222d and Defendant Board's regulations implementing Section 10-222d are unconstitutional.

223.    Further, the Court should enjoin Defendant Board and Defendant Straub—as the policymaker for all discipline at Maloney High School—from enforcement of Section 10-222d through its regulations and practices.

**SEVENTH CAUSE OF ACTION**
(Declaratory Judgment/Injunction)
(U.S. Constitution, First Amendment)
(Connecticut Constitution, Art. I, Secs. 4 and 5)
(Unconstitutional Overbreadth, Vagueness)
(Against All Defendants)

224.    Plaintiff repeats the allegations in Paragraph Nos. 1 through 223 above.

225.    Section 10-222d of the Connecticut General Statutes ("Section 10-222d") violates the First Amendment of the U.S. Constitution, facially and as applied to C.S.

226.    Defendant Board's codes, regulations, and policies incorporate the prescriptions of Section 10-222d and, therefore, are also unconstitutional.

227.    There is a case or controversy, an actual bona fide and substantial question in

28

dispute, which requires settlement between the parties.

### *Facial Challenge*

228.    A facial challenge under the First Amendment is permitted in order to invalidate a statute as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's otherwise legitimate sweep.

229.    Section 10-222d covers a substantial amount of protected conduct, *i.e.*, any speech uttered by any public-school student in Connecticut to or about any other student in his or her school district.

230.    The statute sweeps too far and prohibits expression that should be protected, in addition to expression that can be proscribed.

231.    The statute is written so broadly that it could apply to the examples of otherwise protected speech set forth above at Paragraph Nos. 202 to 205.

232.    A facial challenge under the First Amendment is also permitted where a law is vague in its failure to adequately define a key term so that individuals do not know whether certain expression will constitute a violation of the law.

233.    Section 10-222d is vague in its failure to adequately define "bullying."

234.    An individual cannot know what expression will cause emotional harm to another student.

235.    The statute attempts to illustrate examples of "bullying," stating that bullying may include expression "based on any actual or perceived differentiating characteristic," such as those typically protected by civil right statutes.

29

236. However, the statute expressly provides that "bullying" may not be limited to such categories of expression, offering no meaningful guidance as to forms of bullying which may not be "based on any actual or perceived differentiating characteristic."

### *As Applied Challenge*

237. As applied to C.S., Section 10-222d violated his right to free speech.

238. As set forth above, Defendants retaliated against C.S. for his private off-campus reportage to his friends about the election results (the October 26, 2022 Post) and for his private on-campus protest to his friends about the bullying charge (the October 27, 2022 Post).

239. Moreover, Defendants retaliated against C.S. for his private off-campus announcement to his friends about his intention to run for class president which expressed a decidedly Republican view-point (the September 15, 2022 Post).

240. In no instance was C.S.' speech "based on any actual or perceived differentiating characteristic" of Jane Doe.

\*      \*      \*      \*

241. Based on the forgoing, the Court should declare that Section 10-222d and Defendant Board's regulations implementing Section 10-222d are unconstitutional.

242. Further, the Court should enjoin Defendant Board and Defendant Straub—as the policymaker for all discipline at Maloney High School—from enforcement of Section 10-222d through its regulations and practices.

## EIGHTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress)
(Against all Defendants)

243.    Plaintiff repeats the allegations in Paragraph Nos. 1 through 238 above.

244.    Defendants should have realized that their conduct involved an unreasonable risk of causing emotional distress to C.S. and that such distress, if it were caused, might result in illness or bodily harm.

245.    Defendants' conduct did, in fact, cause C.S. to suffer severe emotional distress, resulting in severe gastrointestinal (GI) pain, a sinus infection, loss of appetite, sleeplessness, depression, and anxiety.

*        *        *        *

246.    Defendants were well-aware that C.S. suffered from ASD.

247.    It is well-known that individuals suffering from ASD often experience an inability to cope with stress, anxiety, or frustration.

248.    It is well-known that individuals suffering from ASD often experience associated physical and mental health conditions which are exacerbated during episodes or periods of heightened stress.

249.    It is well known that some of the key physical comorbidities associated with ASD affect the GI system and immune system and metabolism.

250.    C.S.' emotional distress was severe, caused him to miss several work shifts, and continues to this day.

[remainder of page intentionally blank]

31

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Katherine Sweeney, on behalf of her son C.S., respectfully prays that judgment in her favor be entered on all claims and requests that the Court award the following relief:

    i.    An order enjoining Defendants from violating C.S.' rights under the Federal and State Constitutions;

    ii.    An order directing Defendants to expunge the October 29, 2022 suspension from C.S.' school record, for all purposes;

    iii.    An order directing Defendants to cease monitoring C.S.' out-of-school communications and conduct;

    iv.    An order directing Defendants to provide C.S. with a constitutionally adequate "name-clearing" hearing;

    v.    A declaratory judgment that Section 10-222d of the Connecticut General Statutes is void for vagueness and overbreadth, as applied and on its face;

    vi.    A declaratory judgment that Defendants regulations and practices implementing Section 10-222d of the Connecticut General Statutes are unconstitutional, as applied and on their face;

    vii.    An order enjoining Defendants from enforcing Section 10-222d of the Connecticut General Statutes through its regulations and practices.

    viii.    An order directing Defendants to install C.S. as the junior class president on the Maloney High School student council for the remainder of the 2022-2023 academic year.

    ix.    Alternatively an order directing Defendants to install C.S. as the senior class president on the Maloney High School student council for the 2023-2024 academic year;

    x.    An order directing Defendants to fund and sponsor an anti-bullying awareness campaign consistent with the federal and state constitution, for which C.S. will be the student-chair;

    xi.    An award of nominal, compensatory, and punitive damages in an amount to be determined at trial;

    xii.    An award of attorney's fees and costs;

xiii.    An award of post-judgment interest; and

xiv.    Any other relief the Court determines is just and proper.

## JURY DEMAND

Plaintiff Katherine Sweeney, on behalf of her son C.S., demands a trial by jury.

Dated: March 20, 2023
       Madison, Connecticut

Respectfully submitted,

By: _____
       Patrick J. Sweeney (ct 12345)
       THE LAW OFFICES OF
       PATRICK J. SWEENEY
       781 Boston Post Rd., No. 1143
       Madison, Connecticut 06443
       Tel.: (860) 402-8100
       Email: patrick@pjslegal.com

33